Council, we will take the case under advisement. All right, our fifth case for this morning is Yeoman v. Pollard. And for that one, we will begin with Mr. Lindiger. Please. Good morning, Your Honors. May it please the Court. By six minutes, yes. It's still morning. Barely. My name is Mike Lindiger, and I represent Adam Yeoman in the manner before the Court today. Yeoman is entitled to a stay under Reins so that he may exhaust his unexhausted claims at the State Court because he's shown good cause for two reasons. First— Yeoman appears to have made a strategic decision to delay exhausting those blasphemy claims based on his misunderstanding of the consequences of that decision. The district court pointed out that if confusion over the rules was to justify a stay, every pro se prisoner would be entitled to a stay. What is wrong with that statement? And, I mean, really, what do you believe distinguishes Mr. Yeoman from every other confused pro se litigant? There are a couple reasons, Your Honor. First, the good cause standard is a flexible one. In Reins, and then a few weeks later in Pace, in Reins they did not set any sort of strict requirements. In fact, three of the concurring justices, Justice Stevens authored the concurrence, warned against rigid or inflexible requirements would trap pro se petitioners just like Yeoman. Then a few weeks later in Pace, they gave an example of good cause being reasonable confusion as to state habeas issues. Now, granted, in Pace they were talking about filing deadlines with regard to the state court, but that's just an example. It was not limiting or exclusive. Here, Yeoman's confusion, his reasonable confusion, is somewhat explained in two parts, Your Honor. First, as to his, first regarding his state remedies, his reinstatement of his direct appeal rights, and his pursuit of counsel representation during the appeal process, which his appellate attorney, who also acted his trial counsel, another unusual fact in this case, abandoned him. That's not unusual at all.  Okay. Can I just say, you know, if the Supreme Court in Rines had written an opinion in which it had said, every time a petition is presented that's a mixed petition with some claims that are exhausted and others that aren't, the federal district court is instructed to stay until whatever exhaustion remains possible in the state court has happened. Then you would win, you know, because it would just be a nice, clean rule. But, of course, why have a nice, clean rule? That's not what the Supreme Court did. They have something, instead they say that there needs to be a valid reason for this kind of stay, which is what gets us into the trouble here about the possibility that, however mistaken, you know, Mr. Yeoman was, you know, trying to structure the system so that he'd be able to do this. Now, he certainly could still go back to state court. The only thing that's going to happen to him is he won't be able to come back then to federal court. For all I know, the state courts would be able to give him full relief. But I think that's exactly your point, Your Honor. With regard to the good cause standard and the reasonable confusion and pace, the good cause standard is flexible and it should be looked at holistically. But who wouldn't have good cause? I mean, you know, honestly, you probably don't do habeas all the time, I'm going to guess. It's complicated. Think of these people in prison. I mean, they're all confused about it. We've certainly seen it over the years, but yet we hold them to waiver, we hold them to procedural default, we hold them to statutes of limitations, we hold them to exhaustion requirements. There are a lengthy list of things, and we don't care that they didn't get it. We hold them to it. And, Your Honor, we're not advocating for a bright-line rule here. What we have an issue with is the district court's erroneously rigid and inflexible interpretation of pace and rinds. When you look at the district courts. So you're basically saying the bar is really low for good cause. But how do we know that? There's been numerous district courts that we cite in our briefs that support that statement, including some circuit courts as well. But the key here, Your Honor, is, and it shouldn't be overlooked, that the district court conceded that Yeoman met the other two requirements, that his claims are not plainly meritless and that there was no intentional delay or dilatory litigation. They were procedurally defaulted. They would have been dismissed out of hand by the Wisconsin courts on claims of procedural default. You've got to file a post-conviction motion in Wisconsin in tandem with your direct appeal. Yes, I believe you're correct, Your Honor. But there was no, his strategy as far as working his way up, what he fervently believed, whether it was unsound or not, what the magistrate. My point goes to the issue about the district court's conclusion that these claims were plainly meritless. They were because they were going nowhere in the state's courts. So a stay would have been futile in this case. Your Honor, I think the plainly meritless claims goes to his unexhausted claims. I think that's what we spent time on. That's what I'm referring to. His unexhausted claims would have been dismissed instantaneously on grounds of procedural default by the Wisconsin courts because you have to combine a post-conviction motion with your direct appeal under Wisconsin criminal procedure. Well, I'm sorry. I think, Your Honor, in this context, as Judge Wood pointed out earlier, he can go file a 974 petition. In fact, I've been in contact with him, and he's working his way through trying to find counsel in the process of filing that. That has to be combined with a direct appeal. And I think my understanding is that he can still file a 974 petition because of the ineffective assistance of counsel claim he has that gets him around the procedural default. The ineffective assistance of trial counsel? Yes. No, that claim has to be combined with a direct appeal. Your Honor, I may be wrong. But the real pressure point in this case is whether he had good cause for failure to exhaust. And the point that was decisive for the district court was that he did not have good cause for the failure to exhaust. He made, as Judge Rovner has indicated, a strategic decision to try to split his claims. And that's on him. But, Your Honor, that is a, in our opinion, the magistrate, that's too rigid of a standard as far as looking at good cause. The originating court, the Eastern District of Wisconsin, we cited a bunch of cases in our briefs. But, too, I'd like to highlight the Cannon case and the Holm case. Both of those involved finding good cause, granting stays. The question is not good cause for a stay. The question is good cause for the failure to exhaust. You're absolutely right, Your Honor. So what is his best case for good cause for his failure to exhaust? Again, his reasonable confusion about his rights, his remedies, his state court remedies, and his just ability to understand. And I agree, it is a fine line as far as not claiming ignorance of the law is our reason. And we're not advocating that, Your Honor. I think looking at everything holistically, the fact that, you know, he was a pro se applicant. He pursued his rights through the state court. It wasn't as if he was intending exhaustion as we're throwing this term around. I don't think he quite understood that he had to exhaust all the claims at once. And the Holm case, which is very analogous to this, there was a little confusion as far as the difference between post conviction and appellate counsel, there was a pro se applicant, and the Eastern District of Wisconsin did find good cause because there was reasonable confusion as far as the remedies involved. But that's inherent in an abuse of discretion standard. It often means that the district court has the discretion to go ahead and issue the stay and discretion to think that this is just not one of the cases where the stay is there. Yeoman seems to me to have been rather confused about what he was supposed to do with the state appellate remedies. And he's going back and forth and, you know, putting things in and taking things out. And, you know, it's a big mess. But he never actually sits down and just gives the state court the package of things that it needs. And you're absolutely right, Your Honor, that the attempt to remedy that was in his amended habeas petition. He realized that the successive petition issue under the AEDP was looming. So he wanted to make sure that these claims were filed with the federal court. Now, you know, one thing that we addressed in our reply brief that I wanted to briefly touch on before my time runs out is granting this modest request to press the pause button, let Yeoman go back down to the state court, exhaust these claims, and then come back up for federal review will likely be over in a year, year and a half. It's not a long time. Our request comports with the twin pillars of the AEDPA as the state set forth. The first one, reducing the delay in the execution of federal or state. Go ahead and finish your thought. You know, as to the first, Yeoman's a noncapital defendant. He's in the midst of a sentence. There's no delay. So that first concern is completely moot. As far as the second concern, encouraging the petitioners to seek relief from state court first before the federal courts, we're asking for that. Yeoman attempted to raise these claims before, albeit incorrectly, in the context of a second motion for reconsideration. So all we're asking is for the court to, again, press the pause button, let him go back down to the state court, make these arguments, which are not hidden, they're not unknown, and then come back up for federal review. Okay. Thank you very much. Thank you, Your Honor. Ms. Schaefer. Good afternoon. My name is Sarah Schaefer. I'm an assistant attorney general for the state of Wisconsin, and I represent the respondent in this case. In Rines v. Weber, the Supreme Court held that a district court may grant a stay in abeyance for a mixed petition on, quote, unquote, limited circumstances. And this is not one of them. Can you tell me what they are? I mean, I find this murky at best. Well, this case involves the first factor of the Rines test, the good cause factor. Right. And what is good cause? I mean, certainly giving the state the opportunity, even if it's a short round trip, as Judge Sykes is suggesting, giving the state courts the opportunity to exercise whatever discretion they may have over, you know, late or, you know, ineffectiveness of counsel or whatever they may have, it's not up to the federal court to tell the state courts what they can and can't do. Well, in Rines, the good cause language is that a petitioner must show good cause for failure to exhaust. And that is exactly what it's not good cause for a failure to stay. It's not as good cause shown because his federal habeas rights will be forever barred. As Rines said and as this court said a month later in Dulles v. Chambers, the good cause is their good cause for his failure to exhaust his state court remedy. So what would be? I mean, if he were illiterate or if the prison was on shutdown or lockdown or what would be? Give me an example of where you would think good cause exists. I think maybe an example would be in Mr. Yeoman's case, if he did not intentionally try with the district court to un-exhaust his claims. He went to federal court case. He made the strategic decision first. He was not having good cause. He did not show any kind of attempt to file a 97406 motion. There's no claim in the district court or in this court that he did not know he had a 97406 motion. There's no claim. So how would he prove that? I mean, you know, obviously, I guess if you're represented, you would assume that any kind of effective lawyer in Wisconsin would know about 974.06. In his motion for staying abeyance, he recognizes in that notion that he can go back to state court and file a 97406 motion. The reason he doesn't is because he thinks that if the court grants his petition on his exhaustive claims first, then he will be represented on his un-exhaustive claims. So he made the strategic decision thinking that if the court granted his petition on his un-exhaustive claims, I'm sorry, on his exhaustive claims, then he would have counsel for his un-exhaustive claims and go back into state court. Right, which seems like a colossal error of law. I mean, it certainly is proof positive that he doesn't have any idea how this whole system works. I mean, I would agree with that. I mean, but that is not an excuse, basically, for good cause. It only goes to whether he has good cause for failing to exhaust his state court remedies, not whether there's good cause per se. It is not whether his federal habeas rights are barred because of his intentional acts of, you know, not filing his un-exhaustive claims first in state court. And so I think this court doesn't have to look any further than Ryan v. Weber or in this court's case a month later in the Dulles v. Chambers, where that's the only good cause that you look at is whether he has good cause for failure to exhaust his state court remedies. And in this case he acknowledged, I know I can go back to 97406. I don't want to do it per se. I want to get counsel, and I think if the federal court first addresses my exhaustive claims, then I will have counsel and go back with counsel in 97406 claims. So I think maybe that would be – I'm sorry. Would you distinguish Dulles? Sure. You know, the – Okay. So Dulles is distinguishable because in that case this court sent it back to the district court and said – because the first time I think was pre-Rynes, and so when it came up again on Dulles, they said take it back and consider, consider under Rynes, the U.S. Supreme Court just decided, and consider verbatim what this court said. You must decide whether the petitioner had good cause for his failure to exhaust all of his claims and whether his claims were plainly meritless. And so it basically just sent it back, and the district court was there to decide it. In this case, the district court already did decide whether there was good cause. The harm, I think, in granting his petition first say – I know my opponent said just press the pause button, but if you do that, you basically do excuse his purposeful intent on not exhausting his exhaustive claims. You would not give any other petitioners incentive to – Well, you could say you excuse his mistake, too. I mean, I understand your phrasing, but – Sure. And then it would also go against the Rynes language that this is to be granted in limited circumstances and that it is reviewed under abuse of discretion. And here the district court used its discretion and determined there was not good cause for his failure to exhaust. Would you be here saying that the district court abused its discretion if he had granted his stay? I don't know how you could have actually given finality issues, but just hypothetically. I don't – if that was his decision and he found that there was good cause for his failure to exhaust, I don't think I would be here. Okay. Again, just to – I don't think that this – that pace also applies to this court – to this case, I'm sorry, because in that case there was reasonable confusion about state court filing. Again, as a district court in its order, there has been never a claim by Yeoman that he was confused about any kind of state court filings. And so for that, unless there are any further questions from this panel, the state requests that this court affirm the district court's decision denying his petition for a stay in advance. All right. I see no further questions, so thank you very much. Your time expired. I'll give you another minute, Mr. Lindegar. Thank you, Your Honors. Just a few points on rebuttal. I wanted to touch on just briefly the fact that the second reason, demonstrating good cause, the denial to stay results in Yeoman's forever loss of federal review. At a minimum, that, again, adds to the holistic view of what the good cause is. He loses this forever. The Supreme Court under Panetti recognized that this loss is an enormous issue that should be carefully looked at. And second, again, to the second point of the second pillar of the ADPA, how our modest request comports with that, there were two examples in our brief which the state conspicuously did not address at all in their opposition brief, and that is Dismuke and the Santiago cases on page 45 and 46 of our opening brief. In those two cases, the originating court, the Eastern District of Wisconsin, found good cause, granted stays for unexhausted claims that were to be determined. The petitioner hadn't really even set forth and really gave a detail as far as what he was going to go back down to the state court on. It was a little unclear. Again, prospective claims on claims that had not already been in the pipeline in a 974-type petition were still found to be worthy of finding good cause and granting the stay. All right. If there's no further questions, thank you, Your Honor. Thank you very much. And you accepted this case at our request, as I understand. Yes, Your Honor. We thank you very much for your efforts on behalf of your client, thanks to your firm, and, of course, thanks to the state as well. Thank you, Your Honor. We'll take the case under advisement.